175 N.J. Super. 109 (1980)
417 A.2d 1064
WALTER JARRETT AND FANNY JARRETT, H/W, PLAINTIFFS,
v.
DUNCAN THECKER ASSOCIATES; HOUDILLE CONSTRUCTION MATERIALS, INC.; BUCYRUSERIE COMPANY AND BINDER MACHINERY COMPANY, DEFENDANTS.
ROBERT RYAN AND SUSAN RYAN, H/W, PLAINTIFFS,
v.
DUNCAN THECKER ASSOCIATES; HOUDILLE CONSTRUCTION MATERIALS, INC.; BUCYRUSERIE COMPANY AND BINDER MACHINERY COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided April 29, 1980.
*110 Herman A. Adler for plaintiffs Jarrett (Lomell, Muccifori, Adler, Ravaschiere & Amabile, attorneys).
Thomas H. Klein for plaintiffs Ryan.
Roy F. Britt for defendant Duncan Thecker Associates (Britt, Riehl & Missett, attorneys).
George N. Arvanitis for defendant Houdille Construction Materials, Inc. (Carton, Nary, Witt & Arvanitis, attorneys).
*111 HAVEY, J.S.C.
This personal injury action raises a question in the application of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1, et seq. If there is evidence of conduct which, if believable to the jury, would constitute negligence on the part of the employer of a plaintiff, should the judge present to the jury by special verdict the question of ascertaining the percentage of employer's negligence even though the employer is not a party to the suit?
On November 3, 1975 plaintiffs Walter Jarrett and Robert Ryan were employees of the Thomas Procter Company, Inc. (Procter), which, as part of its heavy construction business, dismantles, removes and transports structures used by others in the manufacturing of construction products. Procter was retained by defendant Duncan Thecker Associates (Thecker), the owner of a concrete batching plant constructed on property owned by defendant Houdille Construction Materials, Inc. (Houdille), situate in Manchester Township, Ocean County, New Jersey, to dismantle the plant and transport it to a different locality. While dismantling the plant a hopper being lifted by one of Procter's cranes caused the crane to buckle, thereby injuring plaintiffs who were part of a crew dismantling the plant.
Plaintiffs alleged negligence on the part of Houdille and Thecker, asserting that the hopper was filled with caked cement causing the added weight to buckle the crane. They argued that as business invitees they were owed the duty by defendants of exercising reasonable care to maintain the premises where the work was to be performed in a reasonably safe condition. Steward v. Esso Standard Oil Co., 111 N.J. Super. 426 (App.Div. 1970). Defendants asserted that Procter had the expertise and control over the method by which the dismantling was to take place and argued that no duty was owed to plaintiffs, as Procter's employees. Rodrigues v. Elizabethtown Gas Co., 104 N.J. Super. 436 (App.Div. 1969); Jensen v. Somerset Hosp., 58 N.J. Super. 204 (App.Div. 1959). Further, defendants argued that even assuming they were negligent in the maintenance of the work premises, Procter was also negligent in the manner it *112 supervised the dismantling of the concrete plant. Defendant Houdille was involuntarily dismissed as a party to this action by the court, since it found that the plant in question was one owned, operated and controlled by Thecker and not Houdille, and therefore the latter owed no duty to plaintiffs.
During the trial testimony was given from which the jury could conclude that the contractor Thecker, the remaining defendant, created a condition which was unreasonably safe and that it failed to make reasonable inspection or give notice of the unsafe condition to plaintiffs. Steward, supra, 111 N.J. Super. 426; Zentz v. Toop, 92 N.J. Super. 105 (App.Div. 1966). Other testimony was presented from which the jury could conclude that Procter, in the manner it dismantled the plant and its failure to make a proper inspection of the hopper, was negligent and its negligence contributed to the cause of the accident. Plaintiffs' actions in the dismantling of the plant also raised a possibility that the jury would find plaintiffs were negligent. Defendant Thecker requests that the court submit as a special verdict to the jury the question of employer Procter's negligence with an instruction that they apportion its percentage of negligence.
N.J.S.A. 2A:15-5.1 reads:
Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering.
N.J.S.A. 2A:15-5.2 reads:
In all negligence actions in which the question of liability is in dispute, the trier of fact shall make the following as findings of fact:
(a) The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence, that is, the full value of the injured party's damages;
(b) The extent, in the form of a percentage, of each parties' negligence. The percentage of negligence of each party shall be based on 100% and the total of all percentages of negligence of all the parties to a suit shall be 100%.
(c) The judge shall mold the judgment from the finding of fact made by the trier of fact.
*113 Procter is not a party to this suit because of the workers' compensation bar preventing plaintiffs from direct suit. N.J.S.A. 34:15-8. No New Jersey case is found holding that an employer's negligence may be fixed by the jury. In Arcell v. Ashland Chemical Co., Inc., 152 N.J. Super. 471 (Law Div. 1977), Judge Tarleton granted a motion to dismiss third-party complaints filed by the defendants against plaintiff's employer on the basis of the express prohibition of the Workers' Compensation Act, N.J.S.A. 34:15-8, and left unanswered whether the jury should establish the percentage of negligence attributable to the employer. In Connar v. West Shore Equipment of Milwaukee, 68 Wis.2d 42, 227 N.W.2d 660 (1975), the Supreme Court of Wisconsin held that it is immaterial that an entity which may be partly responsible is not a party or is immune from further liability, and that the apportionment by a special verdict must include all whose negligence may have contributed to the arising of the cause of action. It held that failure to give the jury an opportunity when apportioning negligence to consider the negligence of all of the parties to the transaction, whether or not they are parties to the lawsuit, was reversible error.
The comparative negligence statute in Wisconsin is essentially the same statute as N.J.S.A. 2A:15-5.1, but in New Jersey the Legislature went further in adopting N.J.S.A. 2A:15-5.2. It explicitly directed that special verdicts shall require the jury to make findings of fact of:
(b) The extent, in the form of percentage, of each parties' negligence. The percentage of negligence of each party shall be based on 100% and the total of all percentages of negligence of all the parties to a suit shall be 100%. [Emphasis supplied]
The statute clearly limits the jury's deliberations to parties to the suit, rather than parties to the transaction. I am constrained to be guided by this legislative mandate although the holding in Connar provides a more rational basis for the triers of the facts to resolve the issue of comparing negligence. In similar settings a jury is asked to compare plaintiff's negligence with the negligence of other entities who are no longer involved in the suit. It is asked, for example, to ascertain the percentage *114 of negligence attributable to a party who has settled, thereby reducing the possible percentage of negligence the jury may attribute to the remaining defendants. Rogers v. Spady, 147 N.J. Super. 274 (App.Div. 1977). This results in a more equitable application of N.J.S.A. 2A:15-5.1. That is, in determining whether plaintiff's negligence exceeds that of the person against whom recovery is sought, the comparison is made after the jury has attributed an appropriate degree of negligence to the party no longer in the action. The importance of being allowed to ascertain the percentage of negligence on the part of the nonparty employer is solely to determine whether there should be a verdict in favor of the defendant because of the ultimate outcome of the operation of the Comparative Negligence Act. Roman v. Mitchell, 165 N.J. Super. 68 (App.Div. 1979), rev'd 82 N.J. 336 (1980). In the present case the jury could find both defendant and the employer negligent and could find negligence against either or both of the plaintiffs.
In construing a statute it is to be assumed that the Legislature is thoroughly conversant with its own legislation and the judicial construction placed thereon. Barringer v. Miele, 6 N.J. 139 (1951). It may be assumed, therefore, that the Legislature, in adopting N.J.S.A. 2A:15-5.2, considered the holding of our Appellate Division in Farren v. New Jersey Turnpike Auth., 31 N.J. Super. 356 (App.Div. 1954). Farren held that a tortfeasor may not obtain contribution from an employer subject to the Workers' Compensation Act. Such an employer was not a "joint tortfeasor" within the meaning of the Joint Tortfeasors' Act. Id. at 360. The Legislature's intent may therefore have been that since an employer could not be a tortfeasor, its negligence should not be considered by the jury in attributing negligence.
As the Appellate Division held in Downing v. Stewart, 85 N.J. Super. 62, 67 (App.Div. 1964), in commenting on a court's function in interpreting a statute: "It is not our function to legislate; it is our duty to interpret. In doing so we must give effect to the language employed by the legislative body to properly effectuate the legislative design." Although I am *115 satisfied that a more equitable manner of presenting this matter to the jury would be to direct that it ascertain the percentage of negligence of the employer, to do so would directly violate the language of N.J.S.A. 2A:15-5.2. I, therefore, deny defendant's application for such a special verdict.