**Patrick HOSLEY, et al., Appellants,**

v.

**PITTSBURGH CORNING CORPORATION, Respondent.**

No. C3-86-1429.

Court of Appeals of Minnesota.

Feb. 24, 1987.

Review Denied April 23, 1987.

Richard LaVerdiere, Hastings, for appellants.

Patrick T. Tierney, Eugene D. Buckley, St. Paul, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal comes to us following an initial appeal to this court and the Minnesota Supreme Court, and a remand to the trial court. Both parties appeal the trial court's determination that a finding of uncollectibility under the reallocation provision of Minnesota Statutes § 604.02, subd. 2 (1984) is premature as applied to a party to the transaction who was not a party to the lawsuit. We affirm.

## FACTS

### I. INITIAL JUDGMENT

This products liability action was brought against thirteen manufacturers of asbestos products. The trial court severed all claims against two of the defendants, Johns-Manville Sales Corporation and Un-arco Industries, which had filed for reorganization under Chapter 11 of the federal Bankruptcy Reform Act of 1978. Plaintiff Hosley settled with six of the seven remaining defendants through *Pierringer* releases; only Pittsburgh Corning Corporation remained exposed to liability in the lawsuit.

The trial court permitted the jury to consider the fault of all the parties who contributed to Hosley's injury.[1] The jury allocated fault between nine parties as follows:

| | |
|---|---|
| Plaintiff Patrick Hosley | 7% |
| Six *Pierringer*-released defendants | 58% |
| Johns-Manville Sales Corporation | 25% |
| Pittsburgh Corning Corporation | 10% |
| | 100% |

The jury awarded Hosley $350,000, which is to be allocated among the nine parties according to their percentage of fault:

| | |
|---|---|
| Plaintiff Patrick Hosley | $ 24,500 |
| Six *Pierringer*-released defendants | $203,000 |
| Johns-Manville Sales Corporation | $ 87,500 |
| Pittsburgh Corning Corporation | $ 35,000 |
| | $350,000 |

The court then determined that Pittsburgh Corning was jointly and severally liable with defendant Johns-Manville for the percentage of fault attributed to Manville. *See* Minn.Stat. § 604.02, subd. 1 (1984).

Next, the court determined the maximum amount of the $87,500 Johns-Manville share of damages that could be assessed against plaintiff Patrick Hosley if the obligation of Johns-Manville proves to be uncollectible within the meaning of the reallocation provision of the Minnesota statute governing apportionment of damages.[2] The court determined Hosley's share of these damages is $8,166.67, based on the following allocation:

| | |
|---|---|
| Plaintiff Patrick Hosley (7/75ths) | $ 8,166.67 |
| Six *Pierringer*-released defendants (58/75ths) | $67,666.66 |
| Pittsburgh Corning Corporation (10/75ths) | $11,666.67 |
| | $87,500.00 |

Finally, the court determined that Pittsburgh Corning faced an enforceable judgment obligation of $114,333.33, including

---

1. This procedure is required by a previous decision of the Minnesota Supreme Court. " '[W]hen apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff * * * because of a prior release.' " *Lines v. Ryan*, 272 N.W.2d 896, 902–03 (Minn.1978) (quoting with approval *Connar v. West Shore Equipment of Milwaukee*, 68 Wis.2d 42, 44, 227 N.W.2d 660, 662 (1975)). *See also Frey v. Snelgrove*, 269 N.W.2d 918, 923 (Minn.1978).

2. The reallocation statute provides:

Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.
Minn.Stat. § 604.02, subd. 2 (1984).

(1) $35,000 allocated by the jury according to Pittsburgh Corning's percentage of fault, (2) $11,666.67 joint liability for damages attributable to Johns-Manville, the amount that would be reallocated to Pittsburgh Corning according to the statute on uncollectible obligations, and (3) $67,666.66, based on Pittsburgh Corning's joint liability for the Johns-Manville obligation and representing the portion of the liability that would be reallocated to the other six released defendants. The court stayed Hosley's enforcement of Pittsburgh Corning's joint liability to the extent of his reallocation share, $8,166.67, pending final decision on whether the Johns-Manville obligation is uncollectible.

## II. Subsequent Legal History

The judgment was appealed to the Minnesota Court of Appeals and the Minnesota Supreme Court. *See Hosley v. Armstrong Cork Co.*, 364 N.W.2d 813 (Minn.Ct.App. 1985), *aff'd in part, rev'd in part*, 383 N.W.2d 289 (Minn.1986). The supreme court affirmed the trial court on two issues. The supreme court agreed that the *Pierringer* releases did not waive joint liability among the nonsettling defendants. *Hosley*, 383 N.W.2d at 292. The supreme court also agreed that the reallocation statute applied to the transaction so that a finding of uncollectibility would require reallocation of liability otherwise resting with Pittsburgh Corning, based on its joint liability exposure. *Id.* at 293–94.

The supreme court reversed the trial court's order to stay only that portion of Johns-Manville's liability that would be reallocated to Hosley under the statute on uncollectible obligations. The court concluded that the Hosley *Pierringer* releases covered all claims against the released defendants, including their reallocated portion of the uncollectible obligation of another defendant. Thus, the supreme court held that $75,883 of the Pittsburgh Corning judgment obligation should have been stayed, an amount representing Hosley's and the released defendants' shares of Johns-Manville's liability.

The supreme court remanded for modification of the stay. The court did not decide under what circumstances Johns-Manville's obligation would be uncollectible so that its obligation could be reallocated. Instead, the court required trial court proceedings on that subject. Pittsburgh Corning then moved for a trial court determination that under Minn.Stat. § 604.02, subd. 2, the Johns-Manville portion of liability was uncollectible. In response, Hosley sought enforcement of Pittsburgh Corning's joint liability.

Upon presentation of a request for statutory reallocation, the trial court found the issue was prematurely presented, for two reasons. First, Johns-Manville was not a party to the suit and a judgment for damages had not yet been entered against it. Second, there was no current credible evidence showing creditors remedies against Johns-Manville would be futile. Following the directive of the supreme court, the trial court stayed entry of judgment on $75,883 of Pittsburgh Corning's joint liability to Hosley.

## III. Appeal.

As a result of the supreme court's opinion and the trial court's decision on remand, Hosley cannot recover on the full extent of Pittsburgh Corning's joint liability. Because the trial court's decision leaves uncertain and undefined the prospects for determining when Johns-Manville's obligation will ever be deemed collectible without an actual collection of funds, Hosley understands his resulting burden to pursue recovery from Johns-Manville and to bear risks of nonrecovery. Hosley appeals, contending the Johns-Manville obligation should be found collectible and the stay of judgment lifted, thus permanently barring a finding of uncollectibility. Alternatively, Hosley claims the Johns-Manville obligation should be deemed collectible because the motion for statutory reallocation was not timely.

Pittsburgh Corning also contests the trial court's decision, contending that further delay in respecting its rights under the reallocation statute is an unworkable ap-

proach. Pittsburgh Corning contends the Johns-Manville obligation is presently uncollectible for the very reason that it was not a party to the suit and is not bound by the existing judgment.

Thus, both parties seek an immediate and final determination of their rights. Based on the rationale stated by the trial court, we affirm its decision to deny Pittsburgh Corning's request for reallocation but to stay enforcement of its liability on damages of $75,883.

## ISSUE

Is it premature to seek statutory reallocation of fault of a party to the transaction who is not a party to the lawsuit and whose liability has not been determined by judgment?

## ANALYSIS

1. Hosley claims Johns-Manville's obligation must be deemed collectible because there is no evidence it is presently uncollectible.

The reallocation provision does not indicate justification for permanent disregard of potential uncollectibility. The stay pending a decision on reallocation was appropriate when *Hosley* was decided by the supreme court, it remains appropriate now, and it may remain appropriate unless and until claims against Johns-Manville are legally determined and actually collected. It has not been shown that the Johns-Manville obligation will not become uncollectible.

We appreciate the significance of the stay in limiting Hosley's rights, perhaps permanently. If his claim against Johns-Manville is found to be uncollectible, Hosley will lose his judgment (to the extent the obligation is uncollectible), up to the amount of the stay. Unless and until that finding does occur, Hosley may face a continuing stay as is currently ordered.[3] Nevertheless, it is evident to us that the trial court's decision for a continuing stay was mandated by the earlier supreme court conclusion.

Next, Hosley argues the motion to determine uncollectibility was untimely and should be permanently disregarded. This argument has no merit. Under the statute, the motion must be made within one year after judgment is entered. Minn.Stat. § 604.02, subd. 2 (1984). In this case, the time period for bringing the motion did not begin to run until the stay pending appeal was lifted following the supreme court's decision. Respondent brought the motion within two months of the filing date of the supreme court's decision. The motion was timely.

2. Pittsburgh Corning objects to uncertainty as to its obligation while the issue of uncollectibility remains unresolved. Because the trial court has stayed enforcement of much of Corning's judgment obligation, there is some question if Pittsburgh Corning is in any way aggrieved by the trial court's decision. Nevertheless, Corning wants an immediate finding that Johns-Manville's portion is uncollectible; it contests the trial court's decision that application of the statute is premature. Even though the stay is preferred by Pittsburgh Corning over the demand Hosley makes, its preference is to have the judgment discharged to the extent of the stayed amount.

The trial court believed it was unable to determine whether Johns-Manville's equitable share of liability for Hosley's damages is uncollectible "because Johns-Manville is not bound by the prior judgment." The court stated, "implicit in the statutory term 'uncollectibility' is the legal right to collect." No judgment has been entered against Johns-Manville and so at this point there is no legal right to collect. The trial court concluded, "any determination that, at some time, some amount of money will be uncollectible from Johns-Manville is premature."

Pittsburgh Corning's argument is that the very fact that legal proceedings are needed to determine a judgment against

---

3. Furthermore, even if there were a technical reason to look past the reallocation provision, this would result in Hosley having to face the

suggestion of similar exposure to common law contribution claims. *See Hosley*, 364 N.W.2d at 816–17 (court of appeals majority opinion).

Johns-Manville shows that the judgment is uncollectible at the present moment. Pittsburgh Corning made the same argument to the supreme court, which deferred to the trial court to assess the situation. Pittsburgh Corning argues that in any case involving a party to the transaction but not a party to the action tried, there is cause for a determination of uncollectibility.

We agree with the trial court's analysis. The reallocation provision speaks of a tortfeasor's "obligation" and its "continuing liability," and it is difficult to envision any occasion to determine uncollectibility before a legal obligation is established. Moreover, as we have indicated, we see no prejudice to Pittsburgh Corning in the trial court's decision.

Pittsburgh Corning points out that the supreme court spoke of trial court reallocation proceedings and a determination to be made on whether an obligation is uncollectible "at that time" (*Hosley,* 383 N.W.2d at 294), suggesting that a decision on reallocation must be made when the motion for reallocation is made. This argument may favor Hosley more than Pittsburgh Corning, because it may suggest the intent to permanently deny reallocation based on the present absence of evidence of uncollectibility. We do not read into the words "at that time" the special meaning Pittsburgh Corning asserts. It is evident the supreme court ruled only on the question of a stay and specifically chose not to make a decision on the issue of collectibility.

Finally, Pittsburgh Corning claims Johns-Manville's obligation is uncollectible because of pending bankruptcy proceedings. The trial court found Johns-Manville had not been declared insolvent; it is merely in reorganization and a claims resolution procedure has been established. The court concluded this type of proceeding does not establish uncollectibility, and this view was not an abuse of discretion.

## DECISION

The trial court correctly concluded that it was presently premature to determine whether Johns-Manville's obligation was uncollectible where Johns-Manville was not a party to the litigation.

Affirmed.

LANSING, Judge (concurring specially).

In *Hosley v. Armstrong Cork Co.,* 383 N.W.2d 289 (Minn.1986), the supreme court declined to hold as a matter of law that Johns-Manville's share was uncollectible. On remand Pittsburgh Corning brought a motion under Minn.Stat. § 604.02, subd. 2 (1984), to determine Johns-Manville's share uncollectible. The trial court denied the motion.

I concur in affirming the trial court's implicit holding that the motion is not time-barred and its explicit holding that a determination of uncollectibility is premature. As a severed party, Johns-Manville is not bound by the prior judgment; its actual percentage of fault is yet to be determined. The requirements of due process and Minn. Stat. § 604.02 would suggest that a determination of the liability should precede a decision on whether it is collectible.